# COMMERCIAL LEASE

**THIS LEASE,** dated this _____ *15ᵗʰ* _____ day of October, 2006

by and between

**Bank of America N.A. as Trustee of the Carl Stockbridge Leede Trust, William Edward Leede as trustee of the William E. Leede Trust, Dorothy Leede Hanson as Trustee of the Dorothy Leede Hanson Trust, Charles W. Doland, Julie Doland Shryock and Virginia D. Sanders collectively** _____ **LESSOR**

and

**MIMAR Industries LLC, a Washington limited liability company,** _____ **LESSEE**

**WITNESSETH:** In consideration of the covenants, agreements and stipulations herein contained on the part of Lessee to be paid, kept, and faithfully performed, Lessor does hereby lease, demise, and let unto Lessee those certain premises situated in the City of Tukwila, County of King, State of Washington, known and described as follows:

The entire property described in Exhibit A and known as 406 Evans Black Drive

hereinafter called Premises.

**TO HAVE AND TO HOLD** the same unto Lessee for a term commencing on the date of execution of this lease and terminating on June 30, 2013.

**IN CONSIDERATION** of the leasing of said premises and of the mutual agreements herein contained, each party covenants and agrees with the other as follows:

## 1. RENT

A.  Base Rent    Lessee covenants and agrees to pay Lessor as rental for said premises, a minimum monthly rental of

Thirteen Thousand One Hundred Ninety-Six and no/100 Dollars
($13, 196.00) from date of rent commencement to June 30, 2009,

Fourteen Thousand Five Hundred Fifteen and no/100 Dollars
($14,515.00) from July 1, 2009 to June 30, 2012,

Fifteen Thousand Eight Hundred Thirty-Five and no/100 Dollars
($15,835.00) from July 1, 2012 to June 30, 2013

in lawful money of the United States in advance on the first day of each calendar month of the term of this lease or to pay said sum to such other party and at such place as Lessor may hereafter designate. If occupancy occurs or ends on any day other than the first day of the month, the rent for that month shall be prorated.

The rent commencement date will be the earlier of a date sixty days following the execution of this lease or the day Lessee opens for business.

B.  Additional Rent.    In addition to the base rent described above, Lessee shall pay to Lessor monthly, an additional rent equal to Lessor's estimate of the operating expenses of the property.

    1. Operating expenses shall include the following:
        a. Real property taxes and other taxes and assessments described in paragraph 8 hereof.
        b. The cost of property and liability insurance covering the property and related facilities.
        c. All other operating expenses including, without limitation, the cost of utilities paid by Lessor,

the cost of maintaining and repairing the property, the cost of improvements to common areas, and the redecoration of the building(s), the land, or the common areas of the property.

2. Chargeable operating expenses shall not include the following:
   a. The cost of replacing the roof, when necessary.
   b. Expenditures for capital additions to the property.
   c. The costs of building out or improving the premises of other tenants,
   d. Debt service,
   e. Income taxes,
   f. Management fees

3. Additional rent payments shall be paid as follows:
   a. Lessee shall pay Lessor a monthly sum equal to Lessor's reasonable estimate of additional rent due under the terms of this lease. Lessor shall have the right to change this monthly sum from time to time to reflect Lessor's best estimates of operating expenses attributable to the premises.
   b. Lessor, at least annually, shall account to Lessee for the amount of actual operating expenses attributed to the premises and the amount received from Lessee for the same period of time.
   c. If the amount received from Lessee exceeds the operating expenses attributed to the premises, Lessor shall return the excess sum to Lessee within thirty (30) days of the completion of the accounting. If the amount of operating expenses attributed to the premises exceeds the sums paid by Lessee, Lessee shall pay the deficit to Lessor within thirty (30) days of receipt of the accounting.

Lessor agrees that all Operating Costs shall be reasonable and documented, with documentation to be made available to Lessee or its designee upon request.

## 2. PURPOSE

A. The premises shall be used continuously for the following purpose(s):

   The retail sale of adult books and novelties and related activities.

and no other without the express written consent of Lessor.

B.      Lessee shall not make or allow any unlawful, improper, or offensive use of the premises, or allow, commit, or suffer any strip or waste of the premises. Lessee further agrees not to overload floors or cause undue or serious stress or strain upon the building or any part thereof.

C.      Lessee shall not permit or allow any objectionable noise or odor to escape or be emitted from the premises, or permit anything to be done that creates a nuisance or disturbs any other tenant of the building, or neighbors.

D.      Lessee shall not permit or allow any thing, any process, or condition in or about the premises which will or may make the fire hazard greater than that common to buildings of the same general character that are used for similar purposes.

E.      Lessee shall not permit or allow any operations or activities that may involve or allow the handling, manufacture, treatment, storage, use, transportation, spillage leakage, dumping, discharge or disposal (whether legal or illegal, accidental or intentional) of any hazardous substances, materials, or wastes, or any substances regulated under any local, state, or federal law without the specific written consent of Lessor. Lessee shall immediately report all loss, spillage, or leakage of such substances to Lessor, and Lessee shall remain fully liable for cost of the cleanup and the full documentation of the cleanup, and for meeting the requirements of the appropriate regulatory agencies.

## 3. CONSIDERATION

As partial consideration for the execution of this lease, Lessee has paid to Lessor the sum of Thirteen Thousand One Hundred Ninety-Six and no/100 Dollars ($13,196.00) to be applied to the first month's rent, and Fifteen Thousand Eight Hundred Thirty-Five and no/100 Dollars ($15,835.00), the receipt of which is acknowledged. If Lessee shall have fully complied with all of the terms, conditions, and covenants of this lease, but not otherwise, this sum shall be repaid to Lessee within Thirty (30) days following the expiration of this lease.

## 4. ACCEPTANCE

The premises have been inspected by Lessee and are accepted by Lessee in their present condition. If Lessor has agreed to complete certain improvement(s) before the commencement of the terms of this lease, Lessor agrees to use its best efforts to complete the improvement(s) in a good, timely, and workmanlike manner.

## 5. ALTERATIONS

A. Lessee agrees not to make any alterations, additions, or improvements to the premises without having obtained Lessor's prior written consent, and improvements so made shall be made at the sole cost and expense of Lessee, shall become the property of Lessor, and shall be surrendered with the premises as a part thereof at the end of this lease, without disturbance, molestation, or injury. Such consent shall not be unreasonably withheld and shall be deemed accepted 30 days after submission of the request unless denied.

B. Lessee agrees to punctually perform and comply with all applicable governmental requirements with respect to Lessee's use of the Premises including, but without limitation, governmental requirements that pertain to the accessibility and employment of persons with disabilities , under the Americans with Disabilities Act of 1990 ("ADA"). Lessor and Lessee acknowledge that the current condition of the Premises may not conform to the guidelines established by governmental requirements. In the event modifications to the Premises are required under A.D.A., Lessee shall be responsible for the cost, installation, and maintenance of said alterations. All alterations must be approved in advance by Lessor, whose approval may not be unreasonably withheld. Lessee shall hold Lessor harmless from and indemnify Lessor against any and all cost, liability, or expense, including attorney fees, incurred by Lessor as a result of Lessee's failure to comply with any provision of the A.D.A.

C. Lessee agrees to keep the premises and the land, building(s), and improvements of which it is a part free from all liens of any kind and description caused or incurred by any act or omission of Lessee, and Lessee shall not have the right or authority to incur mechanic's, laborer's, materialmen's, or any other liens on said property.

## 6. REPAIRS

A. Lessee shall at all times keep the premises in a neat, clean, sanitary condition, and except for reasonable wear and tear and damage by fire and other unavoidable casualty, and will at all times preserve said premises in as good repair as they were in at the commencement of this lease, normal wear and tear excepted.

B. All repairs and maintenance shall be at Lessee's sole cost and expense.

C. Lessor shall contract for and directly pay for landscaping, HVAC maintenance, lot sweeping and repair, and other necessary maintenance and Lessee agrees to reimburse Lessor for expenditures not specifically the responsibility of Lessor as described in Paragraph 1.

D. Lessee agrees to allow and hereby grants Lessor and/or Lessor's agents the right of free access to the premises at all reasonable times for the purpose of repair, maintenance and inspection, and for the making of additions to the premises or adjacent premises.

## 7. UTILITIES

A. Lessee agrees to pay when due all charges for electricity, fuel, telephone, water and sewer, and for all other publicly supplied utilities used in or reasonably charged against the leased premises.

B. Lessor may, at Lessor's option, pay the costs of public utility services required to be paid by Lessee hereunder, and Lessee agrees to reimburse Lessor for these expenditures upon demand.

## 8. TAXES

A. Lessee shall pay Lessor as additional rent Lessee's proportionate share of all real estate taxes and assessments of every kind and nature levied upon the property of which the premises is a part.

B. If at any time after the date of this lease, the methods of taxation are altered so that in lieu of or as a substitute for the whole or a part of the real estate taxes or assessments levied against the premises or the property of which the premises is a part, or with respect to the rents received therefrom, or if there should be levied, assessed, or imposed

an income or franchise tax, or the rate thereof shall be increased, then such tax or the amount attributable to the increase shall be included for purposes of computing Lessee's share of real estate taxes.

## 9. INSURANCE, CASUALTY, AND INDEMNIFICATION

A. Lessor shall not be held liable for any accident, damage, or injury to goods or person(s) occurring in or about the premises or for any loss suffered by the business or occupation of Lessee caused by or arising from any acts or any negligence of co-tenants, other occupants of the building, Lessee, Lessee's employees or other persons working for or invited by Lessee.

B. Lessee agrees to indemnify and hold Lessor harmless from any and all claims and demands arising from the negligence of Lessee, Lessee's officers, agents, invitees and/or employees, as well as those arising from Lessee's failure to comply with any covenant of this lease, and Lessee shall at his own expense defend Lessor against any and all suits or actions arising out of such negligence, actual or alleged, and all appeals therefrom, and Lessee shall satisfy and discharge any judgment which may be awarded against Lessor in any such suit or action.

C. In the event of a loss or damage to the building, the leased premises, and/or any contents, Lessee and Lessor each agree to look first to any insurance in its favor before making any claim against the other. Lessor shall not be held responsible for damage to Lessee's trade fixtures, inventory, or other personal property, unless the damage or destruction resulted from Lessor's negligence.

D. Lessee shall keep in effect a policy of public liability insurance insuring the Premises and Lessee's business with a combined single limit of liability of not less than One Million Dollars ($1,000,000) for bodily injury and property damage with Lessee and Lessor named as insured as their respective interests may appear. Lessee shall furnish Lessor with a certificate of insurance or other evidence that such insurance is in force and evidence that its premiums have been paid.

E. In the event the premises are destroyed or damaged to such an extent as to render the same untenable in whole or in a substantial part thereof, Lessee shall give Lessor immediate written notice thereof, and Lessor shall have not more than ninety (90) days after date of such notification to notify Lessee in writing of Lessor's intentions to rebuild or repair the premises. Lessor will prosecute this work without unreasonable delay, and during such period the rent for said premises shall be abated. If Lessor does not notify Lessee of Lessor's intention to rebuild within ninety (90) days of Lessee's notice of substantial damage, Lessee may terminate this lease by giving written notice to Lessor. If the premises are not substantially damaged, and the damage does not cause any substantial interference with Lessee's occupancy of the premises, there will be no abatement of rent and Lessor will repair the damage with all convenient speed.

## 10. RULES

Lessee shall comply with reasonable rules and regulations that Lessor may promulgate in writing from time to time, and Lessor reserves the right to make changes to these rules which shall be binding upon Lessee by delivery of a copy of them to Lessee. Lessor shall not be held responsible to Lessee for the noncompliance of other Lessees.

## 11. SIGNS

Lessee shall have the right to install properly permitted signage without Lessor's approval, provided signage complies with all applicable signage requirements from the City of Tukwila.

## 12. ASSIGNMENT AND SUBLET

A. Lessee agrees not to assign this lease or sublet the premises or any portion of it, or to allow any other person or business to occupy the premises or any part of it, other than to a wholly owned affiliate without obtaining the previous written consent of Lessor.

B. This lease is intended and will be deemed to be personal to the Lessee; and it may, at Lessor's option, be terminated immediately if it is assigned by Lessee to other than a wholly owned affiliate, or if the premises are sublet in whole or in part by Lessee without Lessor's prior written consent.

C. In the event Lessee becomes insolvent, becomes voluntarily or involuntarily bankrupt, or if a receiver, assignee, or other liquidating officer is appointed for the business, Lessor may immediately terminate this lease upon notice to Lessee.

## 13. EMINENT DOMAIN

In the event that all or a part of the premises are taken, condemned, or purchased by an authority having the power of eminent domain, and such taking substantially reduces Lessee's ability to conduct business therein, then this lease shall terminate and be void from the time when possession of the premises is required for the public use. Such taking shall not be deemed an eviction or a breach of Lessor's covenant of quiet enjoyment. Lessee shall pay all rent due and perform all covenants up to the time possession is required for public use. In the event that only a part of the premises is taken which does not substantially affect the ability of Lessee to conduct business therein, then the rent shall be abated in proportion to the loss of occupancy by the Lessee. Lessor shall receive the entire award of just compensation paid without deduction for any estate or interest of Lessee.

## 14. LIGHT AND AIR

Deleted.

## 15. DEFAULT

A. If Lessor defaults in the performance of any covenant required to be performed by Lessor, Lessee may serve Lessor with written notice specifying the default. Lessor shall, within Sixty (60) days of receipt of notice cure the default, except only in the case where the default takes more than Sixty (60) days to cure, Lessor shall have a reasonable time to cure the default. If Lessor fails to cure the default within Sixty (60) days of notice, Lessee's remedies shall include, and are limited to damages and/or injunction, but in no event shall Lessee have the right to terminate this lease.

B. Time is of the essence of this lease. If Lessee fails to pay any amount due under the terms of this lease within Ten (10) days of the due date, a late fee equal to Eighteen (18) percent of the amount due shall be assessed and be immediately due and payable. In addition, if any rent or other sum(s) payable by Lessee remain unpaid Twenty (20) days after its due date, then in addition to the late charge described above, Lessee shall pay Lessor interest on all sums due and not paid at an annual interest rate equal to the highest interest rate permitted by law, or such lower rate as Lessor may designate.

C. If Lessee shall fail or neglect to keep, perform or observe any of the covenants and agreements contained within this lease, and such default shall continue for Ten (10) days or more after written notice of such failure or neglect, then Lessor or those having Lessor's estate in the premises may immediately, or any time thereafter without demand or notice, enter into and upon the premises and repossess the same as the Lessor's former estate, and expel Lessee and those claiming by through or under Lessee and remove Lessee's effects at Lessee's expense, forcibly if necessary, and store the same, all without being guilty of trespass and without prejudice to any remedy which otherwise might be used.

## 16. WAIVER

Any waiver by Lessor of any breach of any covenant contained in this lease to be kept or performed by Lessee shall not be deemed or considered a continuing waiver, and shall not operate to bar or prevent Lessor from declaring a forfeiture for any succeeding breach, either for the same covenant or another.

## 17. ATTORNEY FEES AND COURT COSTS

In case a suit or action is instituted to enforce compliance with any of the terms, covenants, or conditions of this lease, or to collect the rental and other charges which may become due under the terms of this lease, the losing party agrees to pay such sum as the trial court may adjudge reasonable as attorney's fees, and in the event any appeal is taken from any judgment or decree in such suit or action, the losing party agrees to pay such further sum as the appellate court shall adjudge reasonable. Lessee agrees to pay and discharge all Lessor's costs and expenses,

including Lessor's attorney's fees that may arise from enforcing any provision or covenant of this lease even though no suit or action is instituted.

## 18. GOVERNMENTAL REQUIREMENTS

Lessee, at Lessee's sole expense shall be responsible for alterations or other changes to the premises that are required to meet all present and future governmental requirements, including the Americans with Disabilities Act. Lessee shall hold Lessor harmless from and indemnify Lessor against any cost, liability or expense, including attorney's fees, incurred by Lessor as a result of Lessee's failure to comply with any governmental requirements.

## 19. RETURN OF POSSESSION

At the expiration of this lease or upon any earlier termination, Lessee agrees to quit and quietly and peacefully return the premises to Lessor or Lessor's successor in good, clean condition, reasonable wear and tear, damage by fire and unavoidable casualty alone excepted. Lessee shall insure that the premises is free from hazardous materials, and shall remain liable for the documented cleanup of the premises, or any property in which or upon which Lessee created a hazardous condition.

## 20. NOTICES

All notices given under the terms of this lease shall be deemed to be delivered if mailed by regular United States mail to Lessee at

    1045 S. Edward Drive,
    Tempe, AZ 85281-5223

    and to Lessor at

    Bank of America Real Estate Services
    WA1-501-15-08
    PO Box 34029
    800 Fifth Avenue
    Seattle, WA 98124

## 21. HEIRS AND SUCCESSORS

All rights, remedies, and liabilities herein given to or imposed upon Lessor or Lessee shall extend to the heirs, executors, administrators, successors in interest, representatives and so far as this lease is assignable, to assigns of said parties.

## 22. EXHIBITS

Exhibits A and B are attached hereto and by this reference made a part of this lease.

## 23. EXECUTION

This Lease may be executed in several facsimile counterparts, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF** the parties hereto have executed this lease the day and year first above written.

LESSEE:

**MIMAR Industries L.L.C. a Washington limited liability corporation**

By: _____    Date: _10/15/06_

Title: _Managing Member_

**LESSOR:**

**CARL STOCKBRIDGE LEEDE TRUST**
**BANK OF AMERICA N.A. TRUSTEE**

By: _____      Date: __11/7/2006__
Vice President

By: _____      Date: __11/7/2006__
Vice President

**W.E. LEEDE TRUST**

_____      Date: _____
W. E. Leede, Trustee

**DOROTHY LEEDE HANSON TRUST**

_____      Date: _____
Dorothy Leede Hanson, Trustee

_____      Date: _____
Charles W. Doland

_____      Date: _____
Julie Doland Shryock

_____      Date: _____
Virginia Doland Sanders

STATE OF WASHINGTON)
                    ) ss.
County of     KING     )

On this _7th_ day of _November_, A.D. _2006_, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared **John T. Margeson** and **Debra S. Thomas** to me known or proven on the basis of satisfactory evidence to be the **Vice-President** and **Vice President,** respectively of **BANK OF AMERICA, N. A.,** that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act of said bank and that they were authorized to execute the said instrument.

WITNESS my hand and official seal hereto affixed the day and year in this certificate above written.

_Pat A. Wood_
Notary Public in and for the State of Washington
Residing at _Everett_.
Name Printed _PAT A. WOOD_
My appointment expires: _5/1/09_.

EXHIBIT 6, p. 000031

LESSOR:

**CARL STOCKBRIDGE LEEDE TRUST**
**BANK OF AMERICA N.A. TRUSTEE**

By:_____                    Date:_____
          Vice President

By:_____                    Date:_____
          Vice President

**W.E. LEEDE TRUST**

_____                    Date: _10/29/06_
W. E. Leede, Trustee

**DOROTHY LEEDE HANSON TRUST**

_____                    Date: _10/29/06_
Dorothy Leede Hanson, Trustee/W.E. Leede, Successor Trustee

_____                    Date: _11/1/06_
Charles W. Doland

_____                    Date: _____
Julie Doland Shryock

_____                    Date: _____
Virginia Doland Sanders

EXHIBIT 6, p. 000032

(LEASE)

STATE OF WASHINGTON)

                              ss.

County of KING                    )

On this day, personally appeared before me, W. E. Leede, Trustee of the W. E. Leede Trust to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal; This _27TH_ day of _OCTOBER_

                                          Public in and for the State of Washington
                                          Residing at _9539 NE 1ST_
                                          Name Printed: _JOYCE DOLAND_
                                          My appointment expires: _10·30·07_

Notary Public
State of Washington
JOYCE B. DOLAND
My Appointment Expires Oct 30, 2007

STATE OF WASHINGTON)

                              ss.

County of KING                    )

On this day, personally appeared before me, W. E. Leede, Successor Trustee of the Dorothy L. Leede Hanson Trust to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This _27TH_ day of _OCTOBER_

                                          Public in and for the State of Washington
                                          Residing at _9539 NE 1ST_
                                          Name Printed _JOYCE DOLAND_
                                          My appointment expires _10·30·07_

Notary
State of Wash.
JOYCE B. DOLAND
My Appointment Expires Oct 30, 20..

Notary Public
State of Washington
JOYCE B. DOLAND
Appointment Expires Oct 30, 2007

EXHIBIT 6, p. 000033

STATE OF WASHINGTON)

County of KING                    )

On this day, personally appeared before me, Charles W. Doland to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This _1st_ day of _November, 2006_

_Vada A. Besch_
Public in and for the State of Washington

VADA A. BESCH
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
MARCH 29, 2008

Residing at _KING CTY_
Name Printed _VADA A. BESCH_
My appointment expires _3-29-2008_

STATE OF WASHINGTON)

County of KING                    )

On this day, personally appeared before me, Julie Doland Shryock to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This _____ day of _____

Public in and for the State of Washington

Residing at _____
Name Printed _____
My appointment expires _____

STATE OF COLORADO)

County of _____    )

On this day, personally appeared before me, Virginia Doland Sanders to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This _____ day of _____

Public in and for the State of Washington

Residing at _____
Name Printed _____
My appointment expires _____

EXHIBIT 6, p. 000034

LESSOR:

**CARL STOCKBRIDGE LEEDE TRUST
BANK OF AMERICA N.A. TRUSTEE**

By:_____          Date:_____
    Vice President

By:_____          Date:_____
    Vice President

**W.E. LEEDE TRUST**

                                          Date:_____
_____
W. E. Leede, Trustee

**DOROTHY LEEDE HANSON TRUST**

                                          Date:_____
_____
Dorothy Leede Hanson, Trustee

                                          Date:_____
_____
Charles W. Doland

                         Date: 11/02/06
_____
Julie Doland Shryock

                                          Date:_____
_____
Virginia Doland Sanders

PAGE 8
EXHIBIT 6, p. 000035

STATE OF WASHINGTON)

                                    ss.

County of KITSAP            )

On this day, personally appeared before me, Julie Doland Shryock, known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal; This 2nd day of November , 2006

Public in and for the State of Washington

Residing at _Bainbridge Island, WA_

Name Printed ___C. Diaz___

My appointment expires ___12.28.09___

EXHIBIT 6, p. 000036

**LESSOR:**

**CARL STOCKBRIDGE LEEDE TRUST**
**BANK OF AMERICA N.A. TRUSTEE**

By:_____          Date:_____
     Vice President

By:_____          Date:_____
     Vice President

**W.E. LEEDE TRUST**

_____          Date:_____
W. E. Leede, Trustee

**DOROTHY LEEDE HANSON TRUST**

_____          Date:_____
Dorothy Leede Hanson, Trustee

_____          Date:_____
Charles W. Doland

_____          Date: _____
Julie Doland Shryock

*Virginia Doland Sanders*          Date: 7 NOV 2006
Virginia Doland Sanders

EXHIBIT 6, p. 000037

STATE OF WASHINGTON)

ss.

County of KING              )

On this day, personally appeared before me, Charles W. Doland  to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This                    day of _____

Public in and for the State of Washington

Residing at _____
Name Printed _____
My appointment expires _____


STATE OF WASHINGTON)

ss.

County of KING              )

On this day, personally appeared before me, Julie Doland Shryock to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This                    day of _____

Public in and for the State of Washington

Residing at _____
Name Printed _____
My appointment expires _____


STATE OF COLORADO)

ss.

County of El Paso          )

On this day, personally appeared before me, Virginia Doland Sanders  to me known to be the individual described is and who executed the within foregoing instrument, and acknowledged that he signed the same as his free and voluntary act a deed for the uses and purposes therein mentioned.

GIVEN under my hand and official seal ; This 7th      day of November  2006

Public in and for the State of Colorado

Residing at Colorado Springs, CO
Name Printed Alayna M. Koehn
My appointment expires 4-1-2010

ALAYNA M KOEHN
NOTARY PUBLIC
STATE OF COLORADO

EXHIBIT 6, p. 000038

# EXHIBIT A

THAT PORTION OF TRACT 3 OF THE PLAT OF ANDOVER INDUSTRIAL PARK NO. 2, ACCORDING TO THE PLAT RECORDED IN VOLUME 71 OF PLATS, PAGE 68 AND 69, IN KING COUNTY , WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF SAID TRACT 3; THENCE SOUTH $01^0 05'06"$ WEST ALONG THE EASTERLY LIMITS OF SAID TRACT 3 A DISTANCE OF 10.00 FEET; THENCE NORTH $88^0 25'27"$ WEST A DISTANCE OF 175.00 FEET TH THE NORTHWEST CORNER OF THAT CERTAIN TRACT OF LAND AS COVEYED TO FRANK C. BUTY ET AL., BY DEED RECORDED UNDER AUDITOR'S FILE NO. 7109070112, AND THE TRUE POINT OF BEGINNING; THENCE SOUTH 01 $^0 05'06"$ WEST A DISTANCE OF 200.00 FEET TO THE NORTHEAST CORNER OF THAT CERTAIN TRACT OF LAND AS CONVEYED TO HUGH S. FERGUSON AND HIS WIFE JANE A. FERGUSON BY DEED RECORDED UNDER AUDITOR'S FILE No. 6145317; THENCE NORTH $88^0 25'27"$ WEST A DISTANCE OF 201.01 FEET TO THE SOUTHEAST CORNER OF THAT CERTAIN TRACT OF LAND AS CONVEYED TO H. JAY GOULD AND HIS WIFE LEOTO GOULD, BY DEED RECORDED UNDER AUDITOR'S FILE NO. 6050292; THENCE NORTH $01^0 05'06"$ EAST A DISTANCE OF 200.00 FEET; THENCE SOUTH $88^0 25'27'$ EAST A DISTANCE OF 201.01 FEET TO THE TRUE POINT OF BEGINNING.

# EXHIBIT B

1. **Lessor Improvements**
   Lessor, at Lessor's expense shall accomplish the following improvements:

   A. The work described in the Fred Shabazi demolition bid dated October 4, 2006.

   B. The work described in the Fred Shabazi painting bid dated October 4, 2006.

   C. Roof shall be inspected and repaired as necessary. Roof shall continue to be inspected annually by Lessor and repaired or replaced accordingly.

   D. . Parking lot shall be repaired, sealed and restriped in accordance with the Will Harris Site Development Plan dated September 5, 2006

   E. HVAC shall be delivered in good working order. Lessor shall maintain the systems during the initial and subsequent terms of the lease, and the cost of such maintenance shall be included in the maintenance expenses described in paragraph one above.

2. **Option to Renew**
   Provided that Lessee has not been in default of the terms of this lease, Lessee shall have the right to extend the term of this lease for one renewal term of five years. Lessee shall give Lessor One Hundred Eighty (180) days previous written notice of its decision to extend the lease for an additional five (5) years.

   The rent for any year within an optional term shall be adjusted by changes in the Consumer Price Index for all Urban Consumers: US City Average (CPI). The monthly rent for any year within an option term shall be determined by multiplying the monthly rent payable in the year preceding the optional year in question by a factor, the numerator of which is the CPI Index most recently published in December immediately preceding the optional year, and the denominator of which is the CPI Index for the same month in the previous year.

   However, the rent increase in any single year shall not be greater than 5%, and the monthly rent for any year shall not be less the monthly rent charged in the year that preceded it.

---

End of Exhibit

## GUARANTY OF TENANT'S LEASE OBLIGATIONS

The undersigned herby unconditionally guarantee, jointly and severally, to Bank of America N.A. , as Trustee of the Carl Stockbridge Leede Trust, the W. E. Leede Trust, the Dorothy Leede Hanson Trust, Charles W. Doland, Julie Doland Shryock, and Virginia Doland Sanders ("Lessor"), its successors and assigns, the full and prompt payment of Rent and any and all other sums and charges payable by MIMAR Industries L.L.C., a Washington limited liability corporation ("Lessee"), its successors, assigns and subtenants, and the full performance and observance of all of the covenants, terms, conditions, and agreements to be performed and observed by Lessee, its successors, subtenants and assigns pursuant to the terms of the Lease Agreement dated the __15th__ day of October, 2006, regarding the premises commonly known as 406 Evans Black Drive, Tukwila, Washington, (the "Lease").

This guaranty is an absolute and unconditional guaranty of payment and performance by Lessee under the Lease. It shall be enforceable against the undersigned without the necessity of any suit or proceeding on the part of Lessor against Lessee or any other party.

Except for the right to receive such notice of default by Lessee, the undersigned waives any necessity of notice of nonpayment, nonperformance, or nonobservance by Lessee of any term or provision of the Lease. This Guaranty shall not be discharged by reason of any assignment, renewal, modification or extension of the Lease or waiver or forbearance by Lessor of any of its terms, notice of all of which the undersigned herby waives. If Lessor is required to employ an attorney to enforce or declare its rights hereunder, the prevailing party in any such action shall be entitled to recover its attorneys' fees and costs from the nonprevailing party, in an amount to be determined by the court in any such action

Dated: _Oct. 15_ _____ 2006

**New Castle Megastore Corporation, an Arizona corporation doing business as Castle Megastore Corporation**

By: _____

Its _Chairman of Board & CRO_

CASTLE CORPORATION
1045 S EDWARD DR
TEMPE AZ 85281-5223

**Bank of America**

AMOUNT ENCLOSED

| ACCOUNT NUMBER | PAYMENT DUE DATE | CURRENT PAYMENT | PAST DUE AMOUNT |
|---|---|---|---|
| 996504080-0002 | 05/01/07 | 15,956.00 | 0.00 |

| LATE CHARGE | TOTAL DUE |
|---|---|
| 0.00 | 15,956.00 |

☐ Check here if change of address and
fill out the reverse side.

73 996504080002 38 07121 01595600 01595600

BANK OF AMERICA
PRIVATE BANK REAL ESTATE
PO BOX 34029
SEATTLE WA          98124-1029

CASTLE MEGASTORE CORP
To: BANK OF AMERICA N.A. AS TRUSTEE OF CARL STOCKBRIDGE LEEDS TRUST (BOA0Y0000)

Check Number: 030859
Date: May 1, 2007

| Invoice No. | Date | Description | Amount | Discount | Paid Amount |
|---|---|---|---|---|---|
| MAY07 | 5/1/2007 | MAY07 LEASE #18 | $15,956.00 | $.00 | $15,956.00 |
| | | TOTALS: | $15,956.00 | $.00 | $15,956.00 |

## LESSOR'S ASSIGNMENT OF LEASE

FOR VALUE RECEIVED, the undersigned hereby assigns that certain lease dated October 15, 2006 by and between Bank of America, N. A., as Trustee of the Carl Stockbridge Leede Trust, William Edward Leede, as Trustee of the William E. Leede Trust, Dorothy Leede Hanson, as Trustee of the Dorothy Leede Hanson Trust, Charles W. Doland, Julie Doland Shryock, and Virginia D. Sanders, collectively, as Lessor, and MIMAR Industries LLC, as Lessee, covering those certain premises situated in the County of King, State of Washington, known as 406 Evans Black Dr, Tukwila, WA and more particularly described below, and all right, title, and interest in and to and under the said lease, to C.S. & J.H. Leede LLC, hereinafter called the Assignee. This assignment shall not extinguish or diminish the liability of the Lessee therein.

And in consideration of this assignment, the said Assignee hereby assumes and agrees to do and perform and be bound by all covenants, conditions, terms, stipulations, and agreements in said lease binding upon said Lessor.

Date ___9/24/07___

ASSIGNOR: BANK OF AMERICA, N. A., as Trustee of the Carl Stockbridge Leede Trust

_____            _____
JOHN T. MARGESON, Vice President        Nancy H. Simmons, Vice President

ASSIGNEE: C.S. & J.H. Leede LLC

_____
Charles W. Doland, Managing Member

### Legal Description

That portion of Tract 3 of the Plat of Andover Industrial Park No. 2, according to the plat recorded in Volume 71 of Plats, Pages 68 and 69, in King County, Washington, described as follows:

Beginning at the Northeast corner of said Tract 3; thence South 01°05'06" West along the Easterly limits of said Tract 3 a distance of 10.00 feet; thence North 88°25'27" West a distance of 175.00 feet to the Northwest corner of that certain tract of land as conveyed to Frank C. Buty, et. al., by deed recorded under Auditor's File No. 7109070112, and the true point of beginning; thence South 01°05'06" West a distance of 200.00 feet to the Northeast corner of that certain tract of land as conveyed to Hugh S. Ferguson and his wife Jane A. Ferguson, by deed recorded under Auditor's File No. 6145317; thence North 88°25'27" West a distance of 201.01 feet to the Southeast corner of that certain tract of land as conveyed to H. Jay Gould and his wife Leoto Gould, by deed recorded under Auditor's File No. 6050292; thence North 01°05'06" East a distance of 200.00 feet; thence South 88°25'27" East a distance of 201.01 feet to the true point of beginning.

## SUMMARY OF TUKWILA STORE LEASE DAMAGES

|       | Balance Due Rent | Balance Due Expense | TOTAL |
|-------|------------------|---------------------|-------|
| 2009  | $73,894.00       | $18,983.19          | $92,877.19 |
| 2010  | $145,495.00      | $210,402.51         | $355,897.51 |
| 2011  | $70,650.00       |                     | $70,650.00 |
| 2012  | $75,468.00       |                     | $75,468.00 |
| 2013  | $40,908.00       |                     | $40,908.00 |
| TOTAL | $406,415.00      | $229,385.70         | $635,800.70 |

INCOME AND EXPENSES
406 EVANS BLACK RD
TUKWILA, WA
996504080   2009

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENT** | | | | | | | | | | | | | |
| CASTLE'S RENT PAYABLE | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 166,266.00 |
| RENT PAID | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 13,196.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92,372.00 |
| BALANCE DUE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,319.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 73,894.00 |
| | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | |
| ALARM MONITORING-Annual | | | | | | | 510.00 | | | | | | 510.00 |
| ELECTRICITY & GAS | | | | | | | | | | | 490.86 | 1,869.32 | 2,360.18 |
| ROOF MAINTENANCE | 408.75 | | | | | | | | | 410.63 | | | 819.38 |
| ROOF REPAIR | | 190.75 | | | | | | | | | | | 190.75 |
| SECURITY PHONE | 86.45 | 86.45 | 86.45 | 87.10 | 87.10 | 87.10 | 87.18 | 87.23 | -51.18 | | | | 643.88 |
| SURFACE WATER - semi-annual | | 332.82 | | | | | 332.82 | | | | | | 665.64 |
| WATER/SEWER/FIRELINE | | | | | | | | | | | 350.16 | 176.89 | 527.05 |
| LANDSCAPING | | 283.40 | 283.40 | 284.70 | 284.70 | 572.69 | 284.70 | 284.70 | 579.05 | 295.65 | 295.65 | 295.65 | 3,744.29 |
| PEST CONTROL | | | | | | | | | | | 178.67 | 52.26 | 230.93 |
| TAXES | | | | 9,967.57 | | | | | | 9,967.57 | | | 19,935.14 |
| INSURANCE | | | | | | | | | 2,468.00 | | | | 2,468.00 |
| HVAC maintenance | | | | | | | | | 111.69 | | | | 111.69 |
| Replace windows-tenant damage | | | | | | | | | | | 727.26 | | 727.26 |
| Cleanup & repair-tenant damage | | | | | | | | | | | 2,573.25 | | 2,573.25 |
| Clean Storm Drain System | | | | | | | | | | | 70.00 | | 70.00 |
| Rekey building | | | | | | | | | | | | 930.75 | 930.75 |
| **TOTAL EXPENSES** | 495.20 | 893.42 | 369.85 | 10,339.37 | 371.80 | 659.79 | 1,214.70 | 371.93 | 3,107.56 | 10,673.85 | 4,685.85 | 3,324.87 | 36,508.19 |
| CAM PAID 2009 | 2,551.00 | 2,551.00 | 2,468.00 | 2,551.00 | 2,468.00 | 2,468.00 | 2,468.00 | | | | | | 17,525.00 |
| BALANCE DUE EXPENSES | | | | | | | | | | | | | 18,983.19 |

EXHIBIT 9, p. 000046

**INCOME AND EXPENSES**
**406 EVANS BLACK RD**
**TUKWILA, WA**
**996504080   2010**

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RENT** | | | | | | | | | | | | | |
| CASTLES RENT PAYABLE | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 174,180.00 |
| RENT PAYABLE -NEW TENANT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,185.00 | 8,500.00 | 8,500.00 | 8,500.00 | 28,685.00 |
| BALANCE DUE | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 11,330.00 | 6,015.00 | 6,015.00 | 6,015.00 | 145,495.00 |
| **EXPENSES** | | | | | | | | | | | | | |
| ELECTRICITY & GAS | | 937.98 | 736.25 | 657.92 | 724.27 | 480.65 | 344.60 | 215.55 final bill thru 7/20 | | | | | 4,097.22 |
| ROOF MAINTENANCE | | | | | | | | | | | | | 0.00 |
| ROOF REPAIR | | | | | | | | | | | | | 0.00 |
| SECURITY PHONE | | | | | | | | | | | | | 0.00 |
| SURFACE WATER - semi-annual | 382.73 | | | | | | 41.60 prorated 7/1-7/20 | | | | | | 424.33 |
| WATER/SEWER/FIRELINE | 180.51 | 186.33 | 186.33 | 186.33 | 218.98 | 273.96 | 216.21 | 191.31 6/15-7/15 | | | | | 1,639.96 |
| LANDSCAPING | 295.65 | 295.65 | 295.65 | 295.65 | 295.65 | 295.65 | | | 190.74 prorated 7/1-7/20 | | | | 1,964.64 |
| PEST CONTROL | 52.26 | 52.26 | 52.26 | 52.26 | 52.26 | 52.26 | | | 33.72 prorated 7/1-7/20 | | | | 347.28 |
| TAXES | | | | 10,549.54 | | | 1,146.69 prorated 7/1-7/20 | | | | | | 11,696.23 |
| INSURANCE | | | | | | | -439.51 prorated credit-premium was paid thru 9/24/10 i | | | | | | -439.51 |
| HVAC maintenance | | | | | | 650.68 | | | | | | | 650.68 |
| Tree removal | | | | 1,642.00 | | | | | | | | | 1,642.00 |
| Cleanup & repair-tenant damage | | | 28,000.00 | | 109.50 | | | | | | | | 28,109.50 |
| Design Fees | | | | 1,531.90 | | 5,018.70 | | | | | | | 6,550.60 |
| Clean Storm Drain System | | | | | | | | | | | | | 0.00 |
| Graffiti Cleanup | 244.88 | | | | | | | | | | | | 244.88 |
| Lease Commissions | | | | | 19,469.90 | | 19,469.89 | | | | | | 38,939.79 |
| Replace water heater | | | | | 900.00 | | | | | | | | 900.00 |
| Intake fee-building permit | | | | | 695.96 | 1,075.20 | | | | | | | 1,771.16 |
| Structural Engineering | | | | | | 750.00 | | | | | | | 750.00 |
| Tenant improvements | | | | | | 78,023.70 | 32,871.05 | 219.00 | | | | | 111,113.75 |
| TOTAL EXPENSES | 1,156.03 | 1,472.22 | 29,270.49 | 14,915.60 | 22,466.52 | 86,620.80 | 53,874.99 | 625.86 | 0.00 | 0.00 | 0.00 | 0.00 | 210,402.51 |

| | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INCOME AND EXPENSES | | | | | | | | | | | | | |
| 406 EVANS BLACK RD | | | | | | | | | | | | | |
| TUKWILA,WA | | | | | | | | | | | | | |
| 996504080   2011 | | | | | | | | | | | | | |
| RENT | | | | | | | | | | | | | |
| CASTLE'S RENT PAYABLE | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 174,180.00 |
| RENT PAYBLE -NEW TENANT | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,500.00 | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 103,530.00 |
| BALANCE DUE | 6,015.00 | 6,015.00 | 6,015.00 | 6,015.00 | 6,015.00 | 6,015.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 70,650.00 |

| INCOME AND EXPENSES | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 406 EVANS BLACK RD | | | | | | | | | | | | | |
| TUKWILA,WA | | | | | | | | | | | | | |
| 996504080   2012 | | | | | | | | | | | | | |
| RENT | JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC | TOTALS |
| CASTLE'S RENT PAYABLE | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 14,515.00 | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | 182,100.00 |
| RENT PAYBLE -NEW TENANT | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 8,755.00 | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | 106,632.00 |
| BALANCE DUE | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 5,760.00 | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | 75,468.00 |

EXHIBIT 9, p. 000048

| INCOME AND EXPENSES | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 406 EVANS BLACK RD | | | | | | | | |
| TUKWILA, WA | | | | | | | | |
| 996504080   2013 | | | | | | | | TOTALS |
| RENT | JAN | FEB | MAR | APR | MAY | JUN | | |
| CASTLE'S RENT PAYABLE | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | 15,835.00 | | 95,010.00 |
| RENT PAYBLE -NEW TENANT | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | 9,017.00 | | 54,102.00 |
| BALANCE DUE | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | 6,818.00 | | 40,908.00 |
| | | | | | | | | |
| | | | | | | | | |

EXHIBIT 9, p. 000049

# ASSOCIATED ROOFING™ INC

ASSOCRI16206

P.O. BOX 82894

Kenmore, WA 98028

Voice: 206-364-4445

Fax: 206-368-2303

*JAN 2009*

# INVOICE

Invoice Number: 09-01-51963

Invoice Date: Jan 23, 2009

| Customer | Name |
|---|---|
| Bank of America<br>P.O. Box 34029<br>Seattle, WA 98124 | Castles Mega Store<br>406 Evans Black Drive<br>Tukwila, WA |

| Customer ID | Associated Work Order # | Payment Terms | |
|---|---|---|---|
| BOA Real Estate | 16882 | Net 15 Days | |
| Sales Rep ID | Warranty | Completion date | Due Date |
| | n/a | 1/22/09 | 2/7/09 |
| Description | | | Amount |

| Description | Amount |
|---|---|
| 1st Quarter roof maintenance completed. | 375.00 |

*6504050*
*406*
*9033*
*127109*

We accept Master Card and Visa for your convenience!

| | |
|---|---|
| 206 358 3417 | |
| 206-358-3864 | |
| Check/Credit Memo No: | |

| | |
|---|---|
| Subtotal | 375.00 |
| **Sales Tax** | **33.75** |
| **Total Invoice** | **408.75** |
| Payment/Credit Applied | |
| **TOTAL** | 408.75 |

**PLEASE PAY FROM THIS INVOICE INCLUDING SALES TAX - NO STATEMENT WILL BE
SENT. THANK YOU**

EXHIBIT 10, p. 000050

  

**Qwest**
*Spirit of Service®*

BANK OF AMERICA-LEEDE
Bill Date:        Jan 16, 2009
Account No:     206-431-2794 638B

Visit qwest.com

| Balance Forward | New Charges | Total Amount Due | Due Date for New Charges |
|---|---|---|---|
| $.00 | $86.45 | $86.45 | Feb 1, 2009 |

## Account Summary

Previous Balance

Charges                                                                           86.73
Payment        Jan 02        *Thank you for your payment.*        86.73
Balance Forward                                                                   $.00

New Charges        For questions, call:        Page

Qwest              1 800 777-9594              3              86.45
Total New Charges                                                         $86.45

**TOTAL AMOUNT DUE**        6504080        $86.45

1/23/09 / 424
9302

004650 1/2

Your communications needs are our top priority. Contact your **Qwest dedicated business team** to receive a FREE account review and information on **tailored solutions** for your business. **Call 1 800-996-2506** or manage your account online by registering at www.qwest.com/myaccount. Thanks for choosing Qwest.

*Qwest, P O Box 91155, Seattle, WA 98111-9255*        6

EXHIBIT 10, p. 000051

**Qwest.**
*Spirit of Service*
For questions, call 1 800 777-9594



## New Charges

**Qwest
Local Services**

Taxes, Fees and Surcharges
**Total New Charges**                       **$86.45**

00A650 2/2

## Qwest Local Services

### Monthly Charges

Charges from Jan 16 to Feb 16

| Quantity | Description | Code | Item Rate | Amount |
|----------|-------------|------|-----------|--------|
| 1 | Non-Published Service | NPU | .75 | .75 FSL |
| 2 | Business Line | 1FB | 29.00 | 58.00 FSL |
| 2 | Federal Access Charge | 9ZR | 5.88 | 11.76 FSL |

Federal Universal Serv Fund at 10.5477%                1.24
*This charge recovers the amount Qwest contributes to the Federal
Universal Service Fund. This fund helps keep local phone rates
affordable for all Americans.*

**Total Monthly Charges**                    **$71.75**

### Taxes, Fees & Surcharges Summary

*The detail listed below has been included in the New Charges on this bill.
This summary is provided as information only.*

| | Amount |
|---|---|
| Federal Excise at 3% | 2.26 |
| State Sales at 6.5% | 4.90 |
| Local Sales at 2.1% | 1.60 |
| Special District Sales at .4% | .29 |
| City Occupation at 6.382% | 3.75 |
| State 911 at $.20 per access line | .40 |
| *This surcharge, funds the cost of providing emergency services communications systems in your community.* | |
| Local 911 at $.50 per access line | 1.00 |
| *This surcharge, funds the cost of providing emergency services communications systems in your community.* | |
| TRS Excise Funds Federal ADA Requirement at $.12 per access line | .24 |

*continued on back* ⬇

EXHIBIT 10, p. 000052