Christopher R. Kaup, State Bar No. 014820
J. Daryl Dorsey  State Bar No. 024237

**TB** TIFFANY & BOSCO
P.A.

Third Floor, Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-Mail: crk@tblaw.com; jdd@tblaw.com
*Counsel for Dexter Liquidating Trust*

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | (In proceedings under Chapter 11) |
| DEXTER DISTRIBUTING CORPORATION, et al., | Case No. 2:03-bk-03546-RJH |
| Debtor. | Jointly Administered With: |
| | 2-03-BK-03548-RJH |
| THIS FILING APPLIES TO: | 2-03-BK-04695-RJH through 2-03-BK-04710-RJH |
| NEW CASTLE MEGASTORE CORP. | 2-03-BK-05427-RJH |
| | 2-03-BK-11513-RJH |
| | 2-03-BK-11515-RJH |
| | 2-03-BK-04238-RJH |
| | 2-07-BK-01017-RJH |
| | 2-07-BK-01018-RJH; and |
| | 2-07-BK-01019-RJH |
| | 2-07-AP-00215 RJH |
| | (Associated Case 2:07-AP-00215 RJH) |
| | **OBJECTION OF DEXTER LIQUIDATING TRUST TO APPLICATION FOR ALLOWANCE AND PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSE CLAIM FILED BY C.S. & J.H. LEEDE LLC** |

The Dexter Liquidating Trust (the "Trust") hereby objects to the Application for Allowance and Payment of Chapter 11 Administrative Expense Claim (the "Application") filed by C.S. & J.H. Leede LLC ("Applicant" or "Leede").

Applicant seeks court approval for allowance and payment of an administrative expense claim in the amount of $635,800.70 plus attorneys' fees and costs. The Trust objects to the Application on the grounds that: (1) Leede is not entitled to an administrative expense claim against the Trust because (a) Debtors were not the lessees under the lease; (b) Leede's Claim arose prepetition; and (2) Leede received adequate notice of Debtors' Chapter 11 case, thus, the Application is untimely under Ninth Circuit authority. This Objection is supported by the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED this 4th day of October, 2010.

**TIFFANY & BOSCO, P.A.**

By: _/s/ J. Daryl Dorsey #024237_
    Christopher R. Kaup, Esq.
    J. Daryl Dorsey, Esq.
    Third Floor Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016
    *Attorneys for Dexter Liquidating Trust*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**     **JURISDICTION.**

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and Bankruptcy Rule 3003.

## II.    BACKGROUND.

On March 5, 2003, Dexter Distributing Corporation ("Dexter"), Castle Megastore Corporation and certain affiliates (together "Old Castle") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code initiating separate cases jointly administered under Case no. 03-03546 (the "Old Cases"). On February 4, 2004, this Court entered its Order confirming the Joint Plan of Reorganization (the "Old Plan") filed in Old Cases (the "Old Confirmation Order"). The Court retained jurisdiction over the Old Cases and related proceedings only to the extent provided for by that Plan. *See* Order Confirming Joint Chapter 11 Plan of Reorganization, at p. 3 (Dkt no. 745).

On October 15, 2006, MIMAR Industries, LLC ("MIMAR"), alleged by Leede to be a subsidiary of Megastore, signed a lease of certain commercial real property owned Leede's predecessor in interest and Megastore executed a guaranty of those lease obligations.

On March 9, 2007, Dexter, New Castle Megastore Corporation fka Castle Megastore Corporation ("Megastore") and 1113 Progress Drive, Medford, LLC ("Medford") filed new petitions for relief under Chapter 11 giving rise to three new bankruptcy cases[1] (the "New Cases"). Dexter, Megastore and Medford are referred to hereinafter as the "Debtors". On March 9, 2007, the Debtors filed a motion requesting the joint administration of Dexter, Megastore and Medford's New Cases with the Old Cases, which was granted by an order entered March 12, 2007.

---

[1] Case Nos. 07-BK-01017-RJH; 07-BK-01018-RJH; and 07-BK-01019-RJH.

The Debtors, the Official Unsecured Creditors' Committee and certain other parties filed their "Modified and Restated Plan of Reorganization" (the "Plan"). On June 18, 2009, this Court entered its Order confirming the Plan (the "New Confirmation Order"). The Trust existed as of the Effective Date of the Plan, which was July 30, 2009. Under the Plan and the New Confirmation Order, the Dexter Liquidating Trust is the successor to Debtors with respect to ownership of certain assets and standing to object to claims, including the Application.

## III. LEGAL ARGUMENT.

### A. Applicant Has The Burden Of Proof That It Is Entitled To An Administrative Expense Claim.

The burden of proving an administrative expense claim is on the claimant. *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995), *citing*, *In re Sinclair,* 92 B.R. 787, 788 (Bank. S.D. Ill. 1988). The alleged administrative creditor must show that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity and (2) directly and substantially benefitted the estate. In order to keep administrative costs to the estate at a minimum, the phrase "actual, necessary costs and expenses of preserving the estate," § 503(1)(A), is construed narrowly. *In re DAK Indus., Inc.*, 66 F.3d 1091, 1094 (9th Cir. 1995), citing, *In re Palau,* 139 B.R. 942, 944 (9th Cir. BAP 1992), *aff'd,* 18 F.3d 746 (9th Cir. 1994). Leede has failed to meet this burden.

### B. Leede Is Not Entitled To An Administrative Expense Claim Because There Was No Pending Active Bankruptcy Case On The Date The Lease And Guaranty Were Executed.

Leede asserts that its late filed administrative expense claim arises from a guaranty signed by Megastore of a lease of commercial real property executed by a nondebtor. There

is no dispute that those documents were signed in October, 2006, more than two years after entry of the Old Confirmation Order and months before the filing of the New Cases.

There were no bankruptcy estates in the Old Cases after the entry of the Old Confirmation Order because the property of those estates had been transferred to various entities and the Court's retention of jurisdiction was limited pursuant to the terms of the Old Plan. *See* 11 U.S.C. §1141(b); *In re Celebrity Home Entertainment, Inc.,* 210 F.3d 995, 998 (9th Cir. 2000) *citing to and relying upon Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 587 (9th Cir.1993). No bankruptcy estates existed in the New Cases on the date Megastore signed the Guaranty because the petitions giving rise to those cases had not yet been filed. *See* 11 U.S.C. §541(a) (the "commencement of a case . . . creates an estate"). Accordingly, there is no basis in law or fact for the assertion that Megastore's execution of the guaranty directly and substantially benefitted the bankruptcy estates in either the Old Cases or the New Cases[2].

There is no dispute that Megastore rejected the agreements with Leede. The case law is abundantly clear that where a claim had arisen prepetition it must be treated as a prepetition unsecured claim, not as an administrative claim. *See* e.g. *In re TreeSource Industries, Inc.,* 363 F.3d 994, 998 (9th Cir. 2004)(the termination or expiration of the lease occurred upon rejection of the lease and creditor's claim, did not arise post-petition, pre-rejection. Therefore, the resulting damage action for debtor's failure to comply with its

---

[2] Indeed, Applicant acknowledges by its citation to and quotation from *In re Episode USA, Inc.,* 202 B.R. 691, 295 (Bankr. S.D.N.Y. 1996) that a finding that the guaranty was signed by Megastore prepetition necessarily results in the legal conclusion that its claim is not entitled to administrative priority. However, Leede goes on to assert the guaranty was signed "post-petition" (referring to the Old Cases), but, ignores the legal effect of the Old Confirmation Order terminating the existence of the estates. Application, at p. 20.

obligation is treated as a pre-petition general unsecured claim for rejection damages, *see* 11 U.S.C. § 365(g)(1), and not as an administrative expense claim).

The Ninth Circuit has made clear that the critical point in the analysis is the date of contracting (prepetition or postpetition). *In re Abercrombie*, 139 F.3d 755, 758 (9th Cir. 1998)(Applying the "requirement" that the claim arise out of a postpetition transaction with the debtor-in-possession); *DAK Industries*, 66 F.3d at 1093; *In re Palau Corp.,* 18 F.3d 746 (9th Cir.1994). An agreement executed prepetition is not entitled to administrative priority. *Id*. Here, there is no dispute that MIMAR signed the lease and Megastore executed the guaranty prior to the filing of the New Cases[3]. Accordingly, Leede's claim is not entitled to administrative expense priority.

Leede's sole basis for its novel assertion that an agreement, in this case a guaranty, executed prepetition gives rise to an administrative expense claim is that the Old Cases and New Cases allegedly are really "simultaneous" cases. Leede argues that a Chapter 11 debtor should not be permitted to "destroy the administrative-expense status of a claim by simply filing multiple Chapter 11 petitions." Application, at p. 21. That argument is flawed for several reasons and must be rejected.

First, Leede did not hold an administrative claim in the Old Cases or any other type of claim treated by the Old Plan. As a result, Applicant does have standing to assert that Debtors have improperly attempted to modify rights granted pursuant to the Old Plan.

---

[3] Leede's own analysis that a guaranty gives rise to a "claim" under Section 101 and the authority relied upon by him to support that position require the conclusion that the debt owed by Megastore, if any, is a "prepetition obligation." *See* Application, at pp. 19 – 20, quoting from *In re Motley*, 268 B.R. 237, 240 (USBC, CD CA, 2001).

Second, for the same reason, its reliance on *In re Delaware Valley Broadcasters Limited Partnership*, 166 B.R. 36 (Bankr. D.Del. 1994) is seriously misplaced.

Second, this Court already has determined, after a several day trial, that the New Cases were not filed with the intent of modifying the terms of the Old Plan or any other improper purpose and the successive or serial bankruptcies did not violate the Code. *See* New Confirmation Order, at p. 7, lns 5 -12; Findings of Fact & Conclusions of Law Regarding Confirmation of Joint Plan, entered on May 19, 2009 (Dkt no. 2725), at p. 2, ln 9 – p. 3, ln.1; Order Denying Stay Pending Appeal, entered on June 18, 2009, at p. 3, ln. 19 – p. 4, ln. 5. Therefore, the factual predicate necessary for a determination that the New Cases are invalid simply does not exist. *See In re Elmwood Dev. Co.*, 964 F.2d 508, 511 (5th Cir. 1992) ("We conclude that the mere fact that a debtor has previously petitioned for bankruptcy relief does not render a subsequent Chapter 11 petition "*per se*" invalid."); *In re Jartran, Inc.*, 886 F.2d 859, 866-67 (7th Cir. 1989) ("it is equally clear that the provisions of the Code permit the arrangement at issue here; serial Chapter 11 filings are permissible under the Code if filed in good faith, as are liquidating Chapter 11 plans.").

Finally, Leede has cited to no case law supporting his proposition that a creditor which signs an agreement with a reorganized debtor after confirmation of its chapter 11 plan is entitled to an administrative priority in a subsequently filed new chapter 11 case especially where the trial court has ruled the second case was filed in good faith and not for any improper purpose.

Accordingly, Leede's claim is not entitled to administrative expense priority and the Application must be denied.

**C. THE APPLICATION MUST BE DENIED BECAUSE IT IS UNTIMELY UNDER THE BANKRUPTCY RULES AND NINTH CIRCUIT AUTHORITY.**

Even if Leede did not have knowledge of the Castle bankruptcy, the law is clear that the late filed claim is not allowed. Bankruptcy Rule 3003(c)(3) governs the time for filing a proof of claim. The Rule provides in pertinent part:

(c) Filing of proof of claim

---

(3) Time for filing

The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), (c)(4), and (c)(6).

Rule 3002 provides certain exceptions outlined in Rule 3003(c)(3). That rule provides:

(c) Time for filing

In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct.

---

>(6) If notice of the time to file a proof of claim has been mailed to a creditor at a foreign address, on motion filed by the creditor before or after the expiration of the time, the court may extend the time by not more than 60 days if the court finds that the notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim.

Fed. R. Bankr. P. 3002(c)(2), (3), (4) and (6).

An unambiguous reading of the foregoing rules mandates that Leede's Application is time-barred. There is no exception language in Rule 3002 peremitting Leede to file its Application late in a Chapter 11 case. The language which is present delineates that the subsection which provide exceptions only applies to cases under chapter 7, chapter 12, or chapter 13. There is no similar exception in Chapter 11 cases.

Leede's claim that there is no time limit for the filing of a proof of claim in a Chapter 11 case is inaccurate. A simple reading of the rule clarifies that indeed there is a time limit for filing such claims and this time limit is fixed by the Court. That is preciously what occurred in this case. The court set a deadline for filing administrative proofs of claims in the Debtors cases for February 29, 2008. Despite this deadline, Leede failed to file the claim timely.

The only case of note that is cited by Leede in support of the late filing under Rule 3003 is *In re Lang*, 196 B.R. 528 (D. Ariz. 1996). This case, however, is inapposite. *Lang* is a Chapter 13 case, unlike the Castle case. In addition, Judge Marlar denied the motions to file late claims by a private creditor and a government creditor finding that there was insufficient cause to allow the late filed claims.

14003-003/449153

Based on the foregoing, the Trust requests that the Court deny Leede's Application to file its late claim because there is no support under applicable rules or decisional authority to allow the late filing in a Chapter 11 case.

## C. IN THE ALTERNATIVE, SECTION 502(b)(6) CAPS THE AMOUNT OF RENT THAT MAY BE CLAIMED AS DAMAGES BY LEEDE.

Leede's unsecured claim for unpaid rent is limited by Section 502(b)(6). Based on the plain language of that Section, Leede is not entitled to a claim in the amount of $635,800.70, even if this Court permits the late filing. Under the Lease, the monthly payment from the date of rate commencement (October 15, 2006) to June 30, 2009 is $13,196.00 per month. Thus, the Lease rejection damages total $158,352.00. This amount represents the greater of one year following the date of the filing of Megastore's bankruptcy petition (March 9, 2007) which is earlier than the surrender date of July 2009. Because Leede has conceded that Megastore made these payments postpetition, the Court should determine that the claim has been fully paid.

In the event, the Court finds that Megastore is not entitled to receive a credit for the amounts paid postpetition, the damage amount is limited to $158,352.00, the amount reserved in the lease subsequent to Megastore's bankruptcy filing. Section 502 of the Bankruptcy Code provides:

> **(b)** Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> **(6)** if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds--

**(A)** the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
**(i)** the date of the filing of the petition; and
**(ii)** the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
**(B)** any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

The Bankruptcy Code recognizes the distinction among lease termination, surrender and repossession. This recognition is made clear by the plain language of Bankruptcy Code section 502(b)(6). The first clause in that section states: "if such claim is the claim of a lessor for damages resulting from the *termination* of a lease of real property ....". 11 U.S.C. § 502(b)(6) (emphasis added). It is clear that Leede's claim against Megastore is a claim for damages by a landlord resulting from the termination of a real property lease even though Megastore signed only a guaranty.

Section 502(b)(6) then limits a lease termination claim in different ways. First, section 502(b)(6)(A) provides that the "future rent" component of a lease *termination* claim is limited to:

rent reserved by such lease ... following the earlier of--
(i)the date of the filing of the petition; and
(ii)the date on which such *lessor repossessed,* or the *lessee surrendered,* the leased premises ....

11 U.S.C. § 502(b)(6)(A) (emphasis added). The fact that Congress decided to measure the limitation on the "future rent" portion of a lease termination claim by the earlier of "lessee's surrender", "lessor's repossession", and the petition date is revealing, for at least two reasons.

First, it indicates that Congress did not view "lessee's surrender" or "lessor's repossession" to mean the same thing as lease termination. Had Congress intended for "surrender" or "repossession" to mean lease termination, it could have said so by defining the "future rent" component in section 502(b)(6)(A) with reference to the earlier of lease termination or the petition date.

Second, in the statute, Congress modified the term "surrender" by the word "lessee" and modified the term "repossession"'' by the word "lessor". *See* 11 U.S.C. § 502(b)(6)(A)(i) ("the date on which such lessor repossessed, or the lessee surrendered, the leased property"). These modifications indicate that Congress intended for "future rent" claims be measured from the surrender date, *as determined by the tenant's acts.* Had the term "surrender" already encompassed a landlord's acceptance, it would have been unnecessary to modify "surrender" by the term "lessee".

Therefore, for purposes of determining the limitation on the "future rent" component of Leede's purported lease termination claim, when Megastore purportedly left the Tukwila store vacant with the avowed intention not to be bound by the lease, they "surrendered" the store for purposes of Section 502(b)(6)(A). For these purposes, the Debtors need not establish that the landlord has in fact accepted the surrender.

Here, plain language analysis compels the conclusion that the terms "lessee's surrender" and "lessor's repossession" in Section 502(b)(6)(A) necessarily mean something materially different than "termination" in the first clause of Section 502(b)(6). Otherwise, Congress would have merely stated that the limitation on the "future rent" claim should be measured by the earlier of the petition date or the lease termination date. In enacting the

statute, however, Congress chose not to do so. Instead, the statute provides that termination damages are measured from the earlier of: (a) the date of the lessee's surrender of the premises, (b) the date of the lessor's repossession of the premises, or (c) the petition date.

The Trust respectfully submit that this Court should, in accordance with the plain language of the statute, measure the "future rent" claim from the date that Castle surrendered the leased premises to Leede, even if Leede never accepted the surrender. Here, there is no absurdity with determining that the word surrender in Section 502(b)(6)(A) means the same thing, namely, that surrender refers only to the acts of a lessee.

With respect to a "future rent" claim, a landlord is entitled only to those items that constitute "rent reserved". 11 U.S.C. § 502(b)(6)(A). The Ninth Circuit Bankruptcy Appellate Panel in *McSheridan* established a three-part test to determine whether a particular charge under a lease qualifies as "rent reserved" such that it may be included in the "future rent" component under section 502(b)(6)(A):

> a. The charge must be (i) designated as "rent" or "additional rent" in the lease; or (ii) denominated as the tenant/lessee's obligation in the lease;
> b. The charge must be related to value of the property or the lease thereon; and
> c. The charge must be properly classified as rent because it is a fixed, regular or periodic charge.

*In re McSheridan,* 184 B.R. at 99-100.

In effect, under *McSheridan,* a landlord gets one claim, which is limited by Section 502(b)(6). If a portion of the claim is disallowed under Section 502(b)(6), the landlord may not file a separate, additional claim. *Id.* at 99-100. The rationale in *McSheridan* has been followed by this Court and many others. *See In re Pacific Arts Publishing, Inc.,* 198 B.R. 319, 323-24 (Bankr. C.D. Cal. 1996) (following *McSheridan*); *In re PPI Enters. (U.S.), Inc.,*

228 B.R. 339, 348 (Bankr. D. Del. 1998); *In re Smith,* 249 B.R. 328, 337 (Bankr. S.D. Ga. 2000)(collecting cases following *McSheridan*). *McSheridan* has also been extended to "unpaid rent" claims under Bankruptcy Code section 502(b)(6)(B). *See Smith,* 249 B.R. at 337. Therefore, it is appropriate to rely on *McSheridan* to determine whether the Leede's Claims are excessive by including charges that do not qualify as "rent reserved".

Also, under *McSheridan,* late charges and interest do not constitute "rent reserved", and therefore are disallowed. *See Smith,* 249 B.R. at 340 (late charges and interest, even if designated as "rent reserved" or "additional rent", do not satisfy the second and third prongs of the *McSheridan* test because they are not related to the value of the property and are due only if there is a default under the lease); *Fifth Ave. Jewelers Inc.,* 203 B.R. at 381 (liquidated damages and interest are not included in "rent reserved"). Consequently, these charges are not includable as an administrative expense. *In re Coleman*, 291 B.R. 203, 204 (Bankr. M.D. Fla. 2003).

In the case at bar, upon information and belief, Megastore had paid in full all amounts due to Leede prior to the date on which it vacated the premises. The Trust disputes the calculations of future rent set forth in the Application and urges this Court to determine that Megastore has fully paid the amount that would be due under 502(b)(6). Otherwise, the amount should be limited to $158,352.00, the amount reserved in the lease subsequently to Megastore's bankruptcy filing. In any event, an evidentiary hearing on the amount of Leede's damages will be necessary in order to determine the amount of its general unsecured claim that should be allowed.

**IV.  CONCLUSION.**

WHEREFORE, the Trust respectfully requests that the Application be denied.  In the event the Court does not deny the claim, it is necessary to set an evidentiary hearing in order to determine the amount of Leede's general unsecured claim.

RESPECTFULLY SUBMITTED this 4th day of October, 2010.

**TIFFANY & BOSCO, P.A.**


By: _/s/ J. Daryl Dorsey #024237_
      Christopher R. Kaup, Esq.
      J. Daryl Dorsey, Esq.
      Third Floor Camelback Esplanade II
      2525 East Camelback Road
      Phoenix, Arizona  85016
      *Attorneys for Dexter Liquidating Trust*


**FOREGOING** filed electronically with
the United States Bankruptcy Court for
the District of Arizona, this 4th day of October,
2010, with a **COPY** of the foregoing emailed
or mailed this same date to:

| | |
|---|---|
| Christopher C. Simpson, Esq. | Kelly Flood, Esq. |
| Alan A. Meda, Esq. | Gary D. Ansel, Esq. |
| C. Taylor Ashworth, Esq. | Marty Harper, Esq. |
| STINSON MORRISON HECKER | Andrew S. Jacob, Esq. |
| 1850 N. Central, Suite 2100 | POLSINELLI, SHURGART |
| Phoenix, AZ 85067-6379 | 3636 N. Central, Suite 120 |
| tashworth@stinsonmoheck.com | Phoenix, AZ 85012 |
| ameda@stinsonmoheck.com | gansel@polsinelli.com; |
| csimpson@stinsonmoheck.com | kflood@polsinelli.com |
| | mharper@polsinelli.com; |
| | ajacob@polsinelli.com |
| | prudd@polsinelli.com |

| | | |
|---|---|---|
| 1 | Steven D. Jerome, Esq. | Michael Carmel, Esq. |
| | Joel P. Hoxie, Esq. | LAWOFFICES OF MICHAEL CARMEL |
| 2 | SNELL & WILMER | 80 E. Columbus Avenue |
| | One Arizona Center | Phoenix, AZ  85012-2334 |
| 3 | Phoenix, AZ  85004-2202 | Michael@mcarmellaw.com |
| 4 | sjerome@swlaw.com | |
| 5 | Lawrence E. Wilk, Esq. | H. Michael Clyde, Esq. |
| | Jonathan P. Ibsen, Esq. | Richard M. Lorenzen, Esq. |
| 6 | Scott J. Richardson, Esq. | Clinten N. Garrett, Esq. |
| 7 | JABURG & WILK | PERKINS COIE BROWN & BAIN |
| | 3200 N. Central Avenue, Suite 2000 | P.O. Box 400 |
| 8 | Phoenix, AZ  85012 | Phoenix, AZ  85001-0400 |
| 9 | lew@jaburgwilk.com; | mclyde@perkinscoie.com |
| | jpi@jaburgwilk.com; | rlorenzen@perkinscoie.com; |
| 10 | sjr@jaburgwilk.com; | CNGarrett@perkinscoie.com |
| 11 | Sean P. Healy, Esq. | Jessica Zahn |
| 12 | Karen L. Karr, Esq. | COMMERICAL INVESTMENT |
| | LEWIS  BRISBOIS  BISGAARD  & | ADVISORS |
| 13 | SMITH | 9805 East Bell Road, Suite 140 |
| 14 | 2929 N. Central Avenue, Suite 1700 | Scottsdale, AZ  85260 |
| | Phoenix, AZ  85012 | |
| 15 | healy@lbbslaw.com; | |
| 16 | karr@lbbslaw.com; | |
| 17 | David Wm. Engelman, Esq. | Kenneth J. Ottaviano, Esq. |
| 18 | Bradley D. Pack, Esq. | William J. Dorsey, Esq. |
| | ENGELMAN BERGER, P.C. | Jeffrey Chadwick, Esq. |
| 19 | 3636 North Central Avenue, #700 | KATTEN, MUCHIN, ROSENMAN, LLP |
| | Phoenix, AZ  85012 | 525 W. Monroe Street |
| 20 | dwe@engelmanberger.com | Chicago, IL  60661 |
| | bdp@engelmanberger.com | Kenneth.ottaviano@kattenlaw.com |
| 21 | | William.dorsey@kattenlaw.com |
| 22 | | Jeffrey.chadwick@kattenlaw.com |
| 23 | ANMP | Topco Sales Vast Resources, Inc. |
| 24 | James C. Sell, Receiver | 9401 De Soto Avenue |
| | 2222 East Camelback Road, Suite 110 | Chattsworth, CA  91311 |
| 25 | Phoenix, AZ  85016 | stan@topcosales.us |
| 26 | jim@forensic-cpa.com | |
| 27 | | |
| 28 | | |

Vibratex, Inc.
P.O. Box 991
Vallejo, CA  94590
vibratex@pacbell.net

Kama Sutra Company
2151 Anchor Court
Thousand Oaks, CA  91320
Beverly@kamasutra.com

California Exotic Novelties
14235 Ramona Avenue
Chino, CA  91710-5751
sc@calexotics.com

Media Products
21541 Blythe Street
Canoga Park, CA  91304
hilary@devilsfilm.com

California Sunshine
Unger Fabrik
P.O. Box 1036
Charlotte, NC  28201-1036
daphnaserror@hotmail.com

Fantasy Lingerie
10260 Norris Avenue
Pacoima, CA  91331

Body Zone
2918 West Virginia Avenue
Phoenix, AZ  85009

PPS/Olympic
Steven P. O'Brien, Esq.
GUST ROSENFELD, PLC
201 East Washington Street, 8th Floor
Phoenix, AZ  85004-2327
spobrien@gustlaw.com

Pulse Distribution, LLC
9640 Owensmouth
Chatsworth, CA  91311

Love Toys, Inc.
3990 W. Russell Road, No. 8
Las Vegas, NV  89118
gene@lovetoysinc.com

Marina Pacific Distributors
7077 Vineland Avenue
North Hollywood, CA  91605
avi@marinapacific.com

Leg Avenue, Inc.
P.O. Box 1036
Charlotte, NC  28201-1036
jenny@legavenue.com

Sin City Video
9155 Deering Avenue
Chatsworth, CA  91311

Earthly Body Video
9420 Lurline Avenue, No. E
Chatsworth, CA  91311
Kevin@earthlybody.com

Novelties by Nass-Walk, Inc.
2075 91st Street
North Bergen, NJ  07047
Kathryn@nasstoys.com

Clear Channel Broadcasting
351 Elliott Avenue West, No. 300
Seattle, WA  98119
lynnodell@clearchannel.com
jodeefraser@clearchannel.com

| | |
|---|---|
| U. S. Trustee<br>OFFICE OF THE U.S. TRUSTEE<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003<br>edward.k.bernatavicius@usdoj.gov | Ethan B. Minkin, Esq.<br>KUTAK ROCK LLP<br>8601 N. Scottsdale Road, Suite 300<br>Scottsdale, AZ 85253-2742<br>Philip.rudd@kutakrock.com<br>Ethan.minkin@kutakrock.com |
| Olympic Coast Investment<br>c/o Dillon E. Jackson<br>FOSTER, PEPPER & SHEFELMAN<br>1111 Third Avenue, Suite 3400<br>Seattle, WA 98101<br>jackd@foster.com | Wachovia Small Business Capital<br>c/o Henk Taylor, Esq.<br>LEWIS AND ROCA LLP<br>40 N. Central Avenue, Suite 1900<br>Phoenix, AZ 85004-4429<br>htaylor@lrlaw.com |
| Dale Schian, Esq.<br>SCHIAN, WALKER PLC<br>3550 N. Central Avenue, Suite 1700<br>Phoenix, AZ 85012<br>ecfdocket@swazlaw.com | Harlan Lyons<br>A.S.K. CONSULTING GROUP LLC<br>40749 N. Boon Lane<br>Anthem, AZ 85086<br>Harlan@harlanlyons.com |
| Thomas J. Salerno, Esq.<br>SQUIRE, SANDERS & DEMPSEY<br>LLP<br>Two Renaissance Square<br>40 N. Central Avenue, Suite 2700<br>Phoenix, AZ 85004-4498<br>tsalerno@ssd.com | James Roach, II, Esq.<br>ROACH & ASSOCIATES, PLLC<br>7320 East Deer Valley Road, Suite 220-A<br>Scottsdale, AZ 85255<br>jroach@jriilaw.com |
| BRIDGE ASSOCIATES, LLC<br>747 Third Avenue, Suite 32A<br>New York, NY 10017 | Richard T. Anderson, Jr., Esq.<br>ANDERSON & MONSON PC<br>Park Plaza West, Suite 460<br>10700 S.W. Beaverton-Hillsdale Highway<br>Beaverton, OR 97005<br>rick@andersonmonson.com |
| Daniel P. Collins, Esq.<br>COLLINS, MAY, POTENZA, BARAN<br>&<br>  GILLESPIE, P.C.<br>201 N. Central Avenue, Suite 2210<br>Phoenix, AZ 85004-0022<br>dcollins@cmpbglaw.com | Robert J. Miller, Esq.<br>Bryce A. Suzuki, Esq.<br>BRYAN CAVE LLP<br>Two North Central Avenue, Suite 2200<br>Phoenix,, AZ 85004-4406<br>rjmiller@bryancave.com<br>bryce.suzuki@bryancave.com |

Steven J. Brown, Esq.
Steven D. Nemecek, Esq.
STEVE BROWN & ASSOCIATES
1414 East Indian School Road, Suite 200
Phoenix, AZ  85014
sbrown@sjbrownlaw.com
snemecek@sjbrownlaw.com

James A. Spear, CPA, JD
5212 West Rose Garden Lane
Glendale, AZ  85308
jamesaspear@hotmail.com

E. J. Peskind, Esq.
E. J. PESKIND, ESQ., PLLC
7047 East Greenway Parkway, Suite 155
Scottsdale, AZ  85254
ejp@azlawpartner.com

Barbara L. Caldwell, Esq.
HEBERT SCHENK PC
4742 North 24th Street, Suite 100
Phoenix, AZ  85016-4858
blc@hs-law.com

Lyman Davis, Esq.
4538 East Jude Lane
Gilbert, AZ  85298
lyman@usalubrications.com

David Hopkins, Esq.
LARSON ALLEN
17550 North Perimeter Drive, Suite 160
Scottsdale, AZ  85255
dhopkins@larsonallen.com

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA  19114-0326

Jay A. Lohman
LOHMAN COMPANY, PLLC
Stapley Center
1630 South Stapley Drive, Suite 108
Mesa, AZ  85204

Taylor R. Coleman
5505 East San Miguel
Paradise Valley, AZ  85253

Philip G. Mitchell, Esq.
JENNINGS, HAUG & CUNNINGHAM LLP
2800 North Central Avenue, Suite 1800
Phoenix, AZ  85004-1049
Philip.mitchell@azbar.org

BAJARANG INVESTMENTS
7749 Country Lane
Pleasanton, CA  94566

Henk Taylor, Esq.
LEWIS AND ROCA LLP
40 N. Central Avenue, Suite 1900
Phoenix, AZ  85004-4429
htaylor@lrlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lowell E. Rothschild, Esq.
MESCH, CLARK & ROTHSCHILD, P.C.
259 N. Meyer Avenue
Tucson, AZ  85701-1090
ecfbk@mcrazlaw.com

Gary A. Plotkin, Esq.
PLOTKIN, RAPOPORT & NAHMIAS
16633 Ventura Boulevard, Suite 800
Encino, CA  91436
gplotkin@prnlaw.com

Bizarre Video Productions
863 Spinnaker Drive West
Hollywood, FL  33019

Scott R. Weaver, Esq.
JAMESON, BABBITT, STITES, LOMBARD
999 Third Avenue, No. 1900
Seattle, WA  98104
sweaver@jbsl.com

Eric W. Kessler, Esq.
KESSLER LAW OFFICE
240 North Center Street
Mesa, AZ  85201
eric@kesslerlaw.phxcoxmail.com

Robert DePiano, Esq.
2533 South Coast Highway 101, No. 280
Cardiff-by-the-Sea, CA  92007
depianolaw@rdrunner.com

Stride News/Mayday LLC
Simbro & Stanley PLC
8767 East Via de Commercio, No. 103
Scottsdale, Z  85258-3374
bstanley@simbroandstanley.com

Richard H. Martin, Esq.
MONTGOMERY MCCRACKEN
123 South Broad Street
Philadelphia, PA  19109
rmartin@mmwr.com

Cowlitz Bank (for AEA)
c/o Daniel M. Caine, Esq.
Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA  98101
caine@ryanlaw.com

James E. Cross, Esq.
OSBORN MALEDON P.A.
2929 North Central Avenue, No. 2100
Phoenix, AZ  85012
jcross@omlaw.com

Bay Bank, Successor to AEA
Attn: A. J. Shott
1505 Westlake Avenue North, #125
Seattle, WA  98109

Municipality of Anchorage
Department of Law
P.O. Box 196650
Anchorage, AK  99519-6650

Jared G. Parker, Esq.
DECONCINI, MCDONALD, YETWIN
& LACY, P.C.
7310 North 16th Street, Suite 330
Phoenix, AZ 85020
jparker@dmylphx.com


/s/ Louis A. Lofredo
Louis A. Lofredo, paralegal